*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0740**

Loria Quade,
Relator,

vs.

City of Minneapolis,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 27, 2016
Reversed
Kirk, Judge**

Department of Employment and Economic Development
File No. 33506515-6

Loria Quade, Bricelyn, Minnesota (pro se relator)

City of Minneapolis, c/o TALX UCM Services, Inc., St. Louis, Missouri (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and Kirk, Judge.

**KIRK**, Judge

In this appeal after remand in an unemployment-compensation matter, relator challenges an unemployment-law judge's (ULJ) determination that she did not request an accommodation to care for an ill family member before she quit her employment and thus is ineligible for benefits. Because the record demonstrated that relator requested an accommodation, we reverse.

## D E C I S I O N

We review a ULJ's decision to deny unemployment benefits to determine whether the findings, inferences, conclusions, or decision are not supported by substantial record evidence or are affected by an error of law or procedure. Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (Supp. 2015). "We view the ULJ's factual findings in the light most favorable to the decision." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). "[W]e will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Id.* But we review questions of law de novo, including the question of whether the ULJ's findings establish that the applicant falls within a statutory exception to ineligibility. *See Nichols v. Reliant Eng'g & Mfg. Inc.*, 720 N.W.2d 590, 594-95 (Minn. App. 2006).

Generally, an employee who quits employment is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1 (2014). But an employee who quits employment is eligible for benefits if the employee quits to provide necessary care to an immediate family member "because of the illness, injury, or disability" of that family member. *Id.*, subd. 1(7)(ii). An applicant can only qualify for this exception if: (1) the applicant

2

informed the employer about the medical problem; (2) the applicant requested an accommodation; and (3) "no reasonable accommodation is made available." *Id.*

This is relator Loria Quade's second appeal of the ULJ's determination that she is disqualified from receiving unemployment benefits on the ground that she voluntarily quit her position as a program assistant with respondent City of Minneapolis. A summary of the history of the dispute was thoroughly discussed in the first appeal. *Quade v. City of Minneapolis*, No. A15-1049, 2016 WL 363528 (Minn. App. Feb. 2016). In the first appeal, the ULJ concluded that the city offered relator a reasonable accommodation, which she refused. This court reversed and remanded, concluding that no reasonable accommodation had been made to relator because the city never formally approved either a six-month or 12-month leave of absence. This court remanded to the ULJ for additional findings on whether relator had requested an accommodation.

On remand, the ULJ determined that relator did not request an accommodation because she did not submit the completed leave-of-absence form that Jennifer Gabbard, the city's human-resources generalist, had e-mailed to relator on March 23. The ULJ reasoned that an employee must file the necessary paperwork in order to be considered for a leave of absence. Relator filed a certiorari appeal.

In her pro se brief, relator argues that she requested every accommodation available from Bruce Plante, her supervisor, and Gabbard. An e-mail sent by relator to Gabbard on November 12, 2014, was part of the record evidence. In the e-mail, relator wrote:

> Bruce [Plante] and I chatted after our meeting and thought we should review what was discussed so we're all on the same page of where we're at and where we're headed.

3

I've highlighted the [g]ist of our conversation in bullet points. If there's anything that needs clarification, or that I misunderstood, please let me know. I want to ensure I'm doing the right thing going forward and so there's no further confusion.

. . . .

- Currently my FML balance is approx. 65 hours, and a plan will have to come into place if there is anticipation of surpassing this within the 12 month period (the options given were: return to work FT, transfer into a PT position, no longer work for the City – *as there are no leave options*). . . .

. . . .

If I don't hear from you by the end of the week I'll assume this is consistent with your understanding.

(Emphasis added.) On November 18, Gabbard replied to relator in an e-mail, stating, "your recap of the conversation . . . is good."

The medical-necessity exception requires that the request for accommodation be made of the "employer." Minn. Stat. § 268.095, subd. 1(7). The statute does not leave room for a reasonableness exception to the accommodation-request requirement.

Upon careful review of the record, we conclude that the ULJ erred by determining that relator did not request an accommodation. The November 2014 e-mail exchange demonstrates that relator asked her supervisor if she could take a personal leave, including a 12-month leave, and that Gabbard confirmed that no leave option was available to relator. The record also includes relator's testimony that she requested a 12-month leave, but she was told that it would not be approved. Gabbard confirmed that relator told her that she

4

had spoken to her union representative and that he had told relator that a personal leave "wasn't appropriate or wasn't advantageous."

The ULJ denied relator's request on the ground that she failed to return a leave-of-absence form that Gabbard e-mailed to her in March prior to relator quitting employment. But Minn. Stat. § 268.095, subd. 7, does not state that an employee must request accommodation from the employer in writing; it only requires that the employee request an accommodation. *Id.* Here, relator satisfied the medical-leave exception when she asked her supervisor for a personal leave.

**Reversed.**